## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ROMEO MAGANA, VICTORIA**
**MAGANA, and EDWARD MAGANA,**

      **Plaintiffs,**

**v.**                                    **No. 1:22-cv-00379-DHU**

**THE GOODYEAR TIRE &RUBBER**
**COMPANY, FCA US LLC, KEY SAFETY**
**SYSTEMS, INC., LITHIA MOTORS INC.**
**d/b/a LITHIA CHRYSLER DODGE JEEP**
**RAM FIAT OF SANTA FE, PAIGE PYKE,**
**And MARTIN PYKE,**

      **Defendants.**

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION TO REMAND

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Remand and Request for Attorney Fees. Doc. 12.  On June 13, 2020, Plaintiff Romero Magana, was seriously injured in a single-vehicle rollover. He and his parents (hereinafter "Plaintiffs") asserted causes of action for negligence, strict liability, and breach of warranty against various entities and individuals in the First Judicial District Court of Santa Fe County, State of New Mexico. Their Complaint sought various damages, including punitive damages. Doc. 1-2.

Following the Complaint, Defendant FCA US LLC (hereinafter "Defendant" or "Defendant FCA") removed the case to this Court pursuant to Sections 1334 and 1452 of Title 28 of the United States Code, alleging that the Plaintiffs asserted a claim for punitive damages against Defendant in direct contravention of two Orders of the United States Bankruptcy Court of the Southern District of New York. Doc. 1.  The Plaintiffs now move to remand, alleging that the two

1

Orders fail to govern the claim. They also seek to recover the attorney fees and costs associated with the removal of the case. Doc. 12.  Having considered the parties' briefing, exhibits, and applicable law, the Court **GRANTS** the Plaintiffs' Motion to Remand and Request for Attorney Fees and Costs.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Chrysler Bankruptcy

The nature of this case relates to and derives from a sale agreement Defendant FCA entered into with Chrysler LLC[1] (hereinafter "Chrysler") during Chrysler's bankruptcy. Doc. 1-3.  On April 30, 2009, Chrysler and its affiliates filed a voluntary bankruptcy petition in the United States District Court of the Southern District of New York (hereinafter "Bankruptcy Court"). *See In re Old Carco LLC*, No. 09-50002 (Bankr. S.D.N.Y. 2009). During Chrysler's bankruptcy proceeding, Defendant FCA[2] entered into a Master Transaction Agreement (hereinafter "MTA") with Chrysler to purchase its assets. Doc. 1-3.  As part of the MTA, Defendant agreed to assume some of Chrysler's liabilities. *See id.* Under Section 2.08(h) of the MTA, the Defendant assumed liability for "all Product Liability Claims[3] *arising* from the sale *after the Closing*[4] of Products or Inventory *manufactured* by Sellers or their Subsidiaries in whole or in part *prior to the Closing*." *Id.* at 17-

---

[1] Chrysler LLC changed its name to Old Carco LLC during the bankruptcy.

[2] Defendant was known as New CarCo Acquisition LLC at the time of Chrysler's bankruptcy case.

[3] "Product Liability Claim" means "any Action or action taken or otherwise sponsored by a customer arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, or any other warranty claims, refunds, rebates, property damage, product recalls, defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action, whether such claim is known or unknown or asserted or unasserted with respect to, Products or items purchased, sold consigned, marketed, stored, delivered, distributed or transported by the Company Business, any Selling Group Member or any of its Subsidiaries, whether such claims or causes of action are known or unknown or asserted or unasserted." Doc. 1-3 at 103.

[4] "Closing" refers to June 10, 2009. Doc. 1-6 at 3.

18 (emphasis added).  Defendant did not assume liability for any "Product Liability Claims arising from the sale of Products or Inventory *prior to the Closing*." *Id.* at 19 (emphasis added). It also did not assume any "Liabilities in strict liability, negligence, gross negligence or recklessness for acts or omissions arising *prior* to or *ongoing* at the Closing." *Id.*

Following the MTA, the Bankruptcy Court entered a Sale Order on June 1, 2009. Doc. 1-4. The Order authorized the sale between Defendant and Chrysler and approved the MTA.  *See id.* at 1.  Four months after the Sale Order, Defendant and Chrysler amended the MTA to expand the Defendant's liability. (Doc. 1-5). Under Amendment No. 4 to the MTA (hereinafter "Amendment 4"), Defendant modified Section 2.08(h) and assumed liability for:

> (i) all Product Liability Claims *arising* from the sale *after the Closing* of Products or Inventory *manufactured* by Sellers of their Subsidiaries in whole or in part *prior to the Closing* and (ii) all Product Liability Claims *arising* from the sale on or *prior to the Closing* of motor vehicles or component parts, in each case manufactured by Sellers or their Subsidiaries and distributed as sold as a Chrysler, Jeep, or Dodge brand vehicle or MOPAR brand part, solely to the extent such Product Liability Claims (A) arise directly from motor vehicle *accidents occurring on or after Closing*, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) *do not include any claim for exemplary or punitive damages.*

*Id.* at 1 (emphasis added).  Defendant did not assume liability for any "Product Liability Claims arising from the sale or Products or Inventory on or prior to the Closing . . . not described in Section 2.08(h)." *Id.* The Bankruptcy Court entered an Order approving Amendment 4 (hereinafter "Amendment Order") on November 19, 2009. (Doc. 1-6).

On July 29, 2015, the Bankruptcy Court entered a Final Decree closing the bankruptcy case. Doc. 1-7.  As part of the Decree, the Court retained "jurisdiction over any and all matters arising from or related to the interpretation, implementation and/or enforcement of [the Decree] and other orders entered" in the case. *Id.* at 4-5.

**B.  Plaintiff Magana's Injury and Subsequent Litigation**

On June 13, 2020, Plaintiff Romeo Magana (hereinafter "Plaintiff RM") was a passenger in a 2007 Dodge Ram traveling along Interstate 25 in Socorro County, New Mexico. Doc.1-2 at 1, 9. While in route, the right rear tire of the Dodge failed, causing the vehicle to roll over multiple times. *See id.* at 12.  Plaintiff RM was ejected from the vehicle and suffered serious injuries. *See id.* at 1, 13.

On March 25, 2022, Plaintiff RM and his parents, Plaintiffs Victoria Magana and Edward Magana, filed suit against multiple entities and individuals in the First Judicial District Court of Santa Fe County, State of New Mexico, asserting causes of action for strict liability, negligence, and breach of warranty. *See id.* at 1-4.  The Complaint asserted specific causes of action against Defendant for strict liability and negligence. *See id.* at 19-23.  The Complaint also sought punitive damages from Defendant for "its post-bankruptcy knowledge of facts that should have led to warnings or service-related action that would have prevented the accident, and [] not [for] action taken pre-bankruptcy." *Id.* at 25.

On May 16, 2022, Defendant removed the case to this Court, alleging that the Plaintiffs asserted a claim for punitive damages "in direct contravention" of the Bankruptcy Court's Sale and Amendment Orders entered in Chrysler's bankruptcy. Doc. 1 at 1.  Defendant further alleged that because the "interpretation and enforcement of the Bankruptcy Court Orders [were] at issue," the case arose under, arose in, or related to a case under Title 11 of the United States Code, thereby empowering this Court with original jurisdiction to hear the case and the authority to sever and transfer the Plaintiffs' claims against it to the Bankruptcy Court. Doc. 27 at 6.  The Plaintiffs now move to remand, alleging that the Bankruptcy Court Orders fail to govern the claim. Doc. 12 at 2.

They further allege that because the Bankruptcy Court Orders are not at issue, the Court lacks subject matter jurisdiction.  *See id.*

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). They may only hear the types of cases that the Constitution itself and Congress, through statute, have authorized them to hear. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Congress has granted federal courts subject matter jurisdiction over two general types of cases. These are: 1) cases "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and 2) cases in which there is complete diversity among the parties and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a). "These jurisdictional grants are known as 'federal-question jurisdiction' and 'diversity jurisdiction' respectively." *Home Depot U.S.A., Inc., v. Jackson*, 139 S. Ct. 1743, 1746 (2019). As part of federal-question jurisdiction, Congress has granted federal courts with "original but not exclusive" jurisdiction over civil cases 1) "arising under Title 11,"[5] or 2) "arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). This jurisdictional grant is often referred to as "Section 1334 jurisdiction."

"In addition to granting federal courts subject matter jurisdiction over certain types of cases, Congress has enacted provisions that permit a defendant to remove cases originally filed in state court to federal court." *Home Depot U.S.A., Inc.,* 139 S. Ct. at 1746. Section 1441 permits a defendant to remove a case based on federal-question or diversity jurisdiction. *See* 28 U.S.C. §

---

[5] In this case, the Defendant did not invoke or rely upon the "arising under" form of Section 1334 jurisdiction to support its argument in favor of removal. Therefore, this Court will not decide whether jurisdiction exists based upon this form of jurisdiction.

1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such an action is pending."). Section 1452 permits removal based on Section 1334 jurisdiction. *See* 28 U.S.C. § 1452(a) ("A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.").

In determining whether removal is proper, the district court will "presume [that] no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *U.S. ex. rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). "Only state-court actions that could have originally been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required." *Caterpiller Inc. v. Williams*, 482 U.S. 386, 391 (1987). The existence of federal-question jurisdiction is determined by the "well pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.*   "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

It is well established that "statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of [their] constitutional role as limited tribunals." *Pritchett v. Off. Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005); *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir.1982) ("Removal statutes are to be strictly construed, and all doubts are to be resolved against removal."). The defendant bears the burden of

showing that removal is proper by a preponderance of the evidence. *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013).

If the district court finds that it lacks subject matter jurisdiction, it must remand the case back to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The court's order to remand "is not reviewable by appeal or otherwise." *Id.* § 1447(d).

## DISCUSSION

To begin, it is important to note that removal in this case cannot be based on general federal-question jurisdiction. The causes of action alleged in the Plaintiffs' Complaint are all grounded exclusively in New Mexico law. Doc. 1-2 at 19-25. Nor can removal in this case be based on diversity jurisdiction. The Plaintiffs and at least two of the other Defendants in the case, specifically, Paige Pyke and Martin Pyke, are citizens and residents of New Mexico. *See id.* at 4. The question before the Court is whether Defendant can remove this case based on specific Section 1334 jurisdiction, requiring analysis on whether Plaintiffs' claim for punitive damages arises in or relates to a Title 11 case.

### A. Pursuant to Section 1334, the Court Would Have Jurisdiction in this Matter if the Case Arose In or Related To a Title 11 Bankruptcy Proceeding.

Congress has granted federal courts with "original, but not exclusive," jurisdiction over civil cases "arising in" or "related to" a Title 11 case. 28 U.S.C. § 1334(b). Civil cases arising in a Title 11 case address those "administrative matters that arise *only* in bankruptcy cases." *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). Such cases are not themselves "based on any right expressly created by Title 11, but nevertheless, would have no existence outside of bankruptcy." *Id.* Due to their nature, such cases are considered "core proceedings." *Stern v. Marshall*, 564 U.S. 462, 476 (2011); *see also U.S. Small Bus. Admin. v. Roman Cath. Church of the Archdiocese of Santa Fe,*

632 B.R. 816, 830 (D.N.M. 2021). A core proceeding is a proceeding which cannot exist outside of a bankruptcy case, or which invokes a "substantive right created by federal bankruptcy law." *In re Wood*, 825 F.2d at 97.

Civil cases "related to" a Title 11 case, on the other hand, are those which "could impact [a] debtor's rights, liabilities, or the administration of [a bankruptcy] estate." *N.M. Pub. Regul. Comm'n v. New Mexican, Inc.*, No. CV 18-1104, 2019 WL 1532810, at *2 (D.N.M. Apr. 9, 2019) (citing *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990)). Such cases "do not depend on the bankruptcy laws for their existence [and] could proceed in another court," and are therefore considered "non-core proceedings." *In re Gardner*, 913 F.2d at 1518.

In either case, the Court would have jurisdiction under Section 1334 if the Plaintiff's claim for punitive damages arose in or related to Chrysler's Bankruptcy matter.

**B. Whether a Plaintiff's Punitive Damages Claim Against Defendant FCA "Arises In" or "Relates To" the Title 11 Case at Issue Depends on How Such Claims are Pled.**

With respect to the Defendant FCA, courts have previously determined that a plaintiff's punitive damages claim against Defendant arises in and relates to Chrysler's bankruptcy case when the claim is pled in a manner which seeks to make Defendant liable for Chrysler's pre-bankruptcy conduct. *See, e.g.*, *Dearden v. FCA US LLC*, No. 5:16-CV-00713, 2017 WL 1190980 (E.D. Pa. Mar. 31, 2017); *Powell v. FCA US LLC*, No. 3:15-CV-393-WHA, 2015 WL 5014097 (M.D. Ala. Aug. 21, 2015); *Quesenberry v. Chrysler Group LLC*, No. 12-48-ART (E.D. Ky. July 31, 2012).

In *Dearden*, for instance, several individuals, including the executor of Mr. and Mrs. Dearden's estate, brought suit after the Deardens and others were involved in a multi-vehicle accident. 2017 WL 1190980, at *2. Upon impact, Mr. and Mrs. Dearden's 1995 Jeep Cherokee immediately burst into flames, killing both of them. *See id.* Prior to the accident, Defendant had

issued a product recall on the vehicle "due to [its] propensity to burst into flames after rear impacts." *Id.*

In the ensuing litigation, the plaintiff alleged that Defendant had failed to inform Mr. and Mrs. Dearden of the recall and asserted causes of action against Defendant for negligence and strict liability. *See id.* He also asserted a claim for punitive damages against Defendant, alleging that it "knew that the location of the fuel tank in the 1993-1998 Jeep Grand Cherokees was leading to fatal post-collision fires, and engaged in legal battles and took efforts to delay a product recall." *Id.* Defendant FCA removed the case to the United States District Court for the Eastern District of Pennsylvania based on Section 1334 jurisdiction, asserting that its potential liability arose in and related to Chrysler's bankruptcy case because it required the Bankruptcy Court to interpret the Sale Order it entered during Chrysler's bankruptcy. *See id.* The court in that case agreed, reasoning that Defendant FCA was only a defendant because of the Sale Order, i.e., because Defendant had purchased assets from Chrysler and was now trying to be made liable for Chrysler's pre-bankruptcy conduct. *See id.* at *3. The court also determined that Defendant FCA's assertion that the punitive damages claim was barred by the Bankruptcy Court's Orders necessarily required interpretation of the Sale Order. *See id.* The court thus found it had jurisdiction in the matter and ultimately severed and transferred the claims against FCA to the bankruptcy court. *See id.* at *4.

On the other hand, courts have also previously determined that a punitive damages claim against Defendant fails to arise in or relate to Chrysler's bankruptcy case when the claim is pled in a manner which seeks to make Defendant liable, not for Chrysler's pre-bankruptcy conduct, but for the Defendant's own post-bankruptcy conduct. *See, e.g.*, *Ingman v. FCA US LLC*, No. CV-17-00069-GF-BMM, 2017 WL 5465521 (D. Mont. Nov. 14, 2017); *Rodriguez v. FCA US LLC*, No.

16-CV-05083-BLF (N.D. Cal. Jan. 23, 2017); *Mathias v. Fiat Chrysler Automobiles*, No. 5:16-CV-01185-EJD (N.D. Cal. Sept. 21, 2016).

In *Mathias*, for example, the court considered a motion to remand in a case where plaintiff brought suit after being seriously injured in an accident in which her Jeep Grand Cherokee left the roadway and eventually struck a pole. 2016 WL 5109967 at *1. She filed suit against Defendant, asserting state causes of action against it for negligence, strict liability, and breach of warranty. *See id.* In her complaint, the plaintiff also asserted a claim for punitive damages against Defendant for its "reckless and intentional misconduct post-bankruptcy." *Id.* Defendant removed the case to the United States District Court for the Northern District of California based on Section 1334 jurisdiction, alleging that the plaintiff's claim for punitive damages arose in and related to Chrysler's bankruptcy case because it required the Bankruptcy Court to interpret the Sale and Amendment Orders it entered during Chrysler's bankruptcy. *See id.* at *2. The court, however, disagreed, finding that the plaintiff's punitive damages claim against Defendant failed to arise in and relate to Chrysler's bankruptcy case. *See id.* at *4. The court explained that, "[i]n the manner pled," the plaintiff's claim for punitive damages was an "'independent claim'" based "only on [Defendant FCA's] own post-closing wrongful conduct." *Id.* (internal quotations and citation omitted). The claim was based solely on "post-[bankruptcy] petition conduct" and not on "a right to payment that arose before the filing of [the bankruptcy] petition" or on "pre-[bankruptcy] petition conduct" and, therefore, did not require that the Bankruptcy Court interpret or enforce the Sale and Amendment Orders it entered in Chrysler's bankruptcy case. *Id.* In addition, the court noted that the plaintiff's complaint did not assert negligence claims against the defendant based on Chrysler's pre-bankruptcy conduct. *See id.* The court thus remanded the case, finding no "viable basis for subject matter jurisdiction" over the matter. *Id.*

10

**C. The Plaintiffs' Claim for Punitive Damages in this Case Does Not Arise In or Relate to a Title 11 Case.**

In the instant case, Plaintiffs' claim for punitive damages against the Defendant fails to arise in or relate to Chrysler's bankruptcy case because the claim is pled in a manner which unequivocally seeks to make the Defendant liable for its own post-bankruptcy conduct, and not for Chrysler's pre-bankruptcy conduct. In *Mathias*, the plaintiff asserted a claim for punitive damages against Defendant for its post-bankruptcy reckless and intentional misconduct. Similarly, in this case, Plaintiffs have asserted a claim for punitive damages against Defendant for its alleged post-bankruptcy knowledge of facts that should have led to warning or service-related action that Plaintiffs assert would have prevented the accident. Unlike the plaintiff's punitive damages claim in *Dearden*, Plaintiffs' punitive damages claim in this case is expressly limited to Defendant's own post-bankruptcy conduct.  Plaintiffs' complaint could not make this clearer, stating:

> 139.   Defendant FCA's conduct warranting punitive damages is <u>only</u> focused on its post-bankruptcy sale knowledge of facts that should have led to warnings or service-related action that would have prevented the accident, and is not focused on action taken pre-bankruptcy.

Doc. 1-2 at 25.

The Court thus concludes that, because Plaintiffs have clearly limited their claim for punitive damages to the Defendant's own post-bankruptcy conduct, the claim, in the manner pled, is an independent claim that does not require the Bankruptcy Court to interpret or enforce the Sale and Amendment Orders it entered in Chrysler's bankruptcy case. The claim fails to arise in and relate to Chrysler's Title 11 bankruptcy case and thus the Court lacks Section 1334 jurisdiction to hear the case.  Plaintiffs' Motion to Remand must and shall be granted.

11

## **ATTORNEY'S FEES AND COSTS**

Plaintiffs ask the Court for an award of attorney fees and costs incurred as a result of Defendant FCA US LLC's improper removal. Doc. 12.  Under federal law, an order remanding a case back to state court "may require payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Such a requirement is appropriate whenever the defendant "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. § 132, 141 (2005); *see also Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1253 (10th Cir. 2010) ("[T]he standard for awarding attorney's fees should turn on the reasonableness of the removal."). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* (internal quotations and citations omitted).

In this case, the Defendant lacked an objectively reasonable basis for seeking removal. As explained above, Plaintiffs' complaint in this case unmistakably provides that Plaintiffs seek punitive damages with regard to Defendant FCA's *post-bankruptcy sale knowledge of facts* that should have led to warnings or other action that would have prevented the accident at issue.  *See* Doc. 1-2 at 25.  Plaintiffs emphasize that the punitive damages claim "is not focused on action taken pre-bankruptcy." *Id.*  The well pleaded complaint leaves no room for interpretation as to what specific conduct underlies the punitive damage claims.  Given the number of prior court decisions addressing this exact issue, in cases involving the same defendant – FCA US LLC, this clarification in Plaintiffs' complaint alone should have made it clear to Defendant that Plaintiffs' punitive damage claim did not require the Bankruptcy Court to interpret or enforce the Sale and Amendment Orders and, therefore, did not arise in or relate to a Title 11 case.   These prior

decisions, and the plain language of the complaint, foreclose any argument that Defendant had a reasonable basis for seeking removal in this case. The Court, therefore, will award reasonable attorney fees and costs incurred as a result of the improper removal.

<u>**CONCLUSION**</u>

The Plaintiffs' claim for punitive damages against the Defendant fails to arise in or relate to a Title 11 case. The Court is, therefore, without jurisdiction to hear the case. Additionally, Defendant FCA US LLC lacked an objectively reasonable basis for seeking removal.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (Doc. 12) is **GRANTED**, and that Plaintiff's accompanying request for attorney fees and costs is **GRANTED.** Plaintiff shall submit an application for reasonable attorney's fees and costs within 14 days of entry of this Memorandum Opinion and Order. Defendant FCA US LLC shall have an additional 14 days to file an objection to the application.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the First Judicial District Court, Santa Fe County, State of New Mexico. The Clerk of Court is accordingly directed to remand the instant action back to the First Judicial District Court in Santa Fe County under 28 U.S.C. § 1447(c).

**HON. DAVID HERRERA URIAS**
**UNITED STATES DISTRICT JUDGE**